UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LY BERDITCHEV CORP.,**<br>**Plaintiff,**<br>v.<br>**ESUPPLEMENTS, LLC and MICHAEL PEERS,**<br>**Defendants.**<br><br>**ESUPPLEMENTS, LLC and MICHAEL PEERS,**<br>**Counterclaimants,**<br>v.<br>**LY BERDITCHEV CORP.,**<br>**Counterclaim Defendant.** | Civ. No. 2:24-cv-00625 (WJM)<br><br>**OPINION** |

In this action, Defendant/Counterclaimant ESupplements, LLC d/b/a Nutricost ("Nutricost")[1] has asserted a counterclaim against Plaintiff/Counterclaim Defendant LY Berditchev Corporation ("LYB") for tortious interference with contract, which LYB now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 15. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, LYB's motion to dismiss is **granted**. Nutricost's counterclaim is **dismissed without prejudice.**

### I. BACKGROUND

Nutricost manufactures dietary supplemental products under the Nutricost trademark that it owns. Compl. ¶¶ 6, 14, 15, ECF No. 1. It sells its products on its own storefronts on third-party online sales platforms such as Amazon.com ("Amazon"), as well as directly to consumers through its internet website and authorized wholesalers that in turn provide Nutricost products to brick-and-mortar retailers. Counterclaim ¶¶ 2-3, ECF No. 11. LYB acquires and re-sells various consumer products, including Nutricost products, on online platforms such as Amazon. Compl. ¶¶ 17-18, 39. Nutricost filed complaints with Amazon alleging that LYB's sale of Nutricost products infringed its trademark. *Id.* at ¶ 45.

---

[1] Although the caption in the docket includes Michael Peers as a counterclaimant, the Counterclaim identifies Nutricost as the only counterclaimant. *See* ECF no. 11.

As a result, certain of LYB's listings were removed by Amazon purportedly causing LYB harm. *Id.* at ¶ 50.

LYB instituted this action claiming that because it only sells genuine products through its Amazon storefront, Nutricost has no legitimate intellectual property claim against it, *id.* at ¶ 38, and that Nutricost knew or should have known that its trademark allegations were false, *id.* at ¶ 59, but nonetheless made false complaints to eliminate fair competition and control pricing, *id.* at ¶¶ 69-70. LYB seeks declaratory judgment and damages for defamation, trade libel, and tortious interference with contract.

In its counterclaim, Nutricost maintains that it has "distribution" agreements with all of its wholesalers prohibiting the sale or distribution of "Nutricost products to any person or entity Distributor knows, should know, or has any reason to believe will resell the Products, directly or indirectly, online." Counterclaim, ¶ 8. The distribution agreement requires wholesalers to sell *only* to Nutricost's authorized brick-and-mortar retailers or authorized online sales platforms, which do not include Amazon. Def. Br. at 2.[2] According to Nutricost, LYB knew of this contractual prohibition yet purchased Nutricost products from one or more of Nutricost's wholesalers, tortiously interfering and causing breach of the distribution agreement. *Id.* at ¶¶ 10-13. Nutricost sues for damages as well as injunctive relief to have LYB cease all sales of Nutricost products.

LYB presently moves to dismiss Nutricost's counterclaim for tortious interference of contract.

## II. DISCUSSION

A motion to dismiss a counterclaim is governed by the same standard applicable to a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. *See Hotaling & Co., LLC v. Berry Solutions Inc.*, 2022 WL 4550145, at *2 (D.N.J. Sept. 29, 2022). The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005). Dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While a complaint need not contain detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The

---

[2] However, ¶ 8 of Nutricost's counterclaim states that "...wholesalers agree to *not* directly or indirectly market, sell, or distribute Nutricost products to expressly authorized brick-and-mortar retailers or expressly authorized online sales platforms, which do not include Amazon.com." (emphasis added).

factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

A claim for tortious interference requires a plaintiff to allege facts showing: (1) the existence of a contract; (2) defendant interfered intentionally and maliciously with that contract; (3) loss of the prospective gain or breach of contract as a result of the interference; and 4) damages resulting from that interference. *Printing Mart-Morristown v. Sharp Elec. Corp.,* 116 N.J. 739, 751-52 (1989); *Fid. Eatontown, LLC v. Excellency Enter., LLC,* No. 16-3899, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017). LYB contends that the counterclaim for tortious interference with contract should be dismissed because Nutricost does not plausibly plead any of the requisite elements. The Court finds that Nutricost fails to adequately plead the second element.

As to the first element, Nutricost sufficiently alleges the existence of a contract. Specifically, Nutricost claims to have "distribution" agreements with its wholesalers prohibiting the wholesalers from selling or distributing "Nutricost products to any person or entity Distributor knows, should know, or has any reason to believe will resell the Products, directly or indirectly, online." Counterclaim, ¶ 8. "Courts in this district have held that a 'claim for tortious interference with contract [may] survive a motion to dismiss where a plaintiff alleges the existence of a contract but does not plead specific facts identifying it.'" *Plumbers & Pipefitters Loc. 572 Health & Welfare Fund v. Merck & Co.,* No. 12-1379, 2014 WL 12621229, at *5 (D.N.J. June 30, 2014) (internal citation omitted)); *see e.g. Teva Pharm. Indus., Ltd. v. Apotex, Inc.,* No. 07–5514, 2008 WL 3413862, at *9 (D.N.J. Aug. 8, 2008) (concluding notice pleading under "Rule 8(a) does not require a party to identify a specific prospective customer or contract.").

The third and fourth elements of tortious interference are also adequately plead. Nutricost alleges LYB induced wholesalers to breach their distribution agreements by selling the products to any entity that might resell the products. *See* Counterclaim ¶ 13. The Court is also satisfied that the Nutricost's assertion of loss of the "economic benefit of [LYB's] sale of Nutricost products on Amazon" adequately states a claim for damages as a result of LYB's "interference with Nutricost's distribution agreements with its wholesalers." Counterclaim ¶ 16.

However, the Counterclaim fails to sufficiently plead that any interference with contract was intentional and malicious. "'Interference is intentional when the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Fid. Eatontown,* 2017 WL 2691417, at *7 (citing *Cargill Global Trading v. Applied Dev. Co.,* 706 F. Supp. 2d 563, 575-76 (D.N.J. 2010)). "Malice"

does not "mean 'ill will;' rather, it means that harm was inflicted intentionally and without justification or excuse." *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 306 (N.J. 2001). There is no compensable tort injury if conduct does not transgress the "rules of the game" such that "a plaintiff's loss of business is merely the incident of healthy competition." *Id.* "The conduct must be both injurious and transgressive of generally accepted standards of common morality or of law." *Id.* (internal quotations and citation omitted). "The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal." *Id.* at 307.

Here, the only allegation of intent in the Counterclaim is conclusory. Nutricost claims that LYB "intentionally, knowingly, and willfully interfered with Nutricost's distribution agreements by inducing one or more of its wholesalers to "sell Nutricost products to [LYB] for resale on Amazon.com" and either conspired "with Nutricost wholesalers to conceal the sale of Nutricost products to [LYB] or [LYB] concealed its true identity or intent to resell the Nutricost products on Amazon." Counterclaim, ¶¶ 13-14. Even accepting as true that LYB knew Nutricost wholesalers were contractually prohibited from selling Nutricost products to LYB, *see* Counterclaim ¶ 12, these are bald allegations of intentional harm that lack any factual support. Moreover, LYB's sale of Nutricost products does not transgress the "rules of the game." *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301, n.4 (3d Cir. 1998) ("According to the 'first sale' or 'exhaustion' doctrine, a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form."); *see e.g., Matrix Essentials, Inc. v. Cosm. Gallery, Inc.*, 870 F. Supp. 1237, 1248 (D.N.J. 1994) (finding no tortious interference where "defendants simply interfered with Matrix's interest in maintaining its distribution and marketing scheme" and were "simply attempting to make a profit through the sale of Matrix goods, just as a competitor would attempt to make a profit by competing with Matrix for consumers"), *aff'd*, 85 F.3d 612 (3d Cir. 1996).

### III. CONCLUSION

For the reasons noted above, LYB's motion to dismiss the counterclaim is **granted**. Nutricost's counterclaim for tortious interference is **dismissed without prejudice.** Defendant may file an amended counterclaim, consistent with the rulings in this Opinion, within thirty days.

Date: September 12, 2024

WILLIAM J. MARTINI, U.S.D.J.

4